IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STANLEY ABLER                              *

    Plaintiff,

                                             *

    v.                                                     Civil No.: BPG-18-3668

                                           *

MAYOR AND CITY COUNCIL
OF BALTIMORE                               *

    Defendant                              *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**MEMORANDUM OPINION**

    The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4.  (ECF Nos. 18, 19). Currently pending are defendants' Motion for Summary Judgment ("Motion") (ECF No. 100), plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment ("Opposition") (ECF No. 105), defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment ("Reply") (ECF No. 107), and plaintiff's Surreply to Defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment ("Surreply") (ECF No. 127).  No hearing is deemed necessary. Loc. R. 105.6.  For the reasons discussed herein, defendants' Motion for Summary Judgment (ECF No. 100) is GRANTED.

**I.      BACKGROUND**

    In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is plaintiff in this case.  Scott v. Harris, 550 U.S. 372, 378 (2007).  Plaintiff Stanley Abler ("plaintiff") brings suit against defendants City of Baltimore and the Baltimore City Fire Department (collectively

"defendants"),[1] alleging violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. ("Rehabilitation Act").  (ECF No. 105 at 1).[2]  Plaintiff asserts that defendants discriminated against him "specifically due to [his] disability of job caused line of duty of PTSD" and because they failed to engage in the interactive process with him and make a reasonable accommodation.  (ECF No. 1 at 6).

Plaintiff was employed by the Baltimore City Fire Department ("BCFD") from March 20, 2006 to November 17, 2016.[3]  (ECF Nos. 100-1 at 2, 105-1 at 2).  During the course of his employment with the BCFD, plaintiff worked as a Firefighter-Paramedic Apprentice, Firefighter-Paramedic, and Paramedic/Cardiac Rescue Technician, although the parties dispute the timing of plaintiff's various positions.  (ECF Nos. 100-1 at 2, 105-1 at 2-3).  Plaintiff alleges that he suffered post-traumatic stress disorder ("PTSD") with severe depression and anxiety stemming from an April 2015 incident while on duty, causing him to become disabled.  (ECF No. 105-1 at 4-5).  After reporting to the Baltimore City Public Safety Infirmary ("PSI") for a medical evaluation, plaintiff was placed on medical leave effective June 7, 2015.  (ECF No. 100-1 at 5).  Plaintiff remained on medical leave through August 19, 2016, although he returned briefly to regular duty on August 10, 2015 through October 13, 2015, and again on December 1, 2015 through December 9, 2015.  (ECF No. 100-11 at 3).  Following the expiration of medical leave on August 19, 2016, plaintiff exhausted his 90 days of retirement leave on November 17, 2016.  (Id.)  Pursuant to a

---

[1] As explained below, the Mayor and City Council of Baltimore is the proper defendant in this case, and the case caption will be changed accordingly.

[2] Plaintiff appears to mistakenly cite to 29 U.S.C. § 703, et seq. in his motion papers when referring to the Rehabilitation Act of 1973 instead of the correct citation: 29 U.S.C. § 701, et seq.

[3] Plaintiff argues that his last day of employment with the BCFD was on December 10, 2016.  (See ECF No. 105-1 at 9).  As discussed below, however, the court concludes that the record as a whole indicates that plaintiff's last day at work was on December 10, 2015, and plaintiff retired on November 17, 2016.  See infra, at 10-13.

Memorandum of Understanding ("MOU") between defendants and plaintiff's former bargaining union, plaintiff was entitled to 12 months of medical leave and an additional 90 days of retirement leave.[4]  (ECF No. 100-9 at 6-7).

On September 11, 2015, plaintiff sent a letter to the BCFD requesting "a voluntary reduction in rank to [his] previously held position of Firefighter ALS."  (ECF No. 105-11 at 2). Subsequent notations on plaintiff's letter by BCFD officials indicate a recommendation of approval of plaintiff's request if a vacancy became available.  (Id.)  On April 6, 2016, however, plaintiff received his first Retirement Process Notification, indicating that plaintiff's medical and retirement leave was set to expire on May 16, 2016.  (ECF No. 105-10 at 2).  On May 4, 2016, plaintiff received a second Retirement Process Notification, this time indicating that plaintiff's medical and retirement leave would expire on November 17, 2016.  (Id. at 3).  In the ensuing months, plaintiff made approximately 70 phone calls to BCFD's human resources ("HR") department and other BCFD and city officials regarding his request for a voluntary reduction in rank (ECF No. 127 at 6), and on November 13, 2016, plaintiff sent a follow up letter to HR, in which he noted his request for a reduction in rank to firefighter was for "medical reasons" (ECF No. 105-11 at 3).  On November 22, 2016, plaintiff appeared for an examination at the PSI, and doctor notes from that date indicate that plaintiff was "no longer with the [BCFD]."  (ECF No. 105-7 at 3).  Plaintiff also appeared for an employee exit interview on the same day.  (ECF No. 100-13 at 2-3).

---

[4] Article 31(B) of the MOU provides that "[a]ny member of the Fire Department of the City of Baltimore, receiving injury or becoming disabled while in the discharge of his duties, so as to prevent him from following his daily occupation or attending to his duties as a member of said Department, such member shall, for 12 months, provided his disability shall last that time, receive his usual salary."  (ECF No. 100-9 at 6).  In addition, Article 31(E) of the MOU provides that "all employees shall receive 90 days of leave with pay just prior to retirement."  (Id. at 7).

On December 7, 2018, plaintiff filed suit against defendants in this court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331.  (ECF No. 1 at 4).  Plaintiff seeks reinstatement, among other relief.  (Id. at 7).  Discovery closed on January 27, 2021, and thereafter, the pending Motion and related pleadings were filed.

## II.   **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is properly considered "material" only if it might affect the outcome of the case under the governing law.  Id.  The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).  On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented.  Anderson, 477 U.S. at 252.  In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the

light most favorable to the non-moving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio</u>

<u>Corp.</u>, 475 U.S. 574, 587 (1986).  The non-moving party, however, may not rest on its pleadings,

and must show that specific, material facts exist to create a genuine, triable issue.  <u>Celotex</u>, 477

U.S. at 324.  A "scintilla" of evidence in favor of the non-moving party, however, is insufficient

to prevent an award of summary judgment.  <u>Anderson</u>, 477 U.S. at 252.  Further, "mere

speculation" by the non-moving party or the "building of one inference upon another" cannot

create a genuine issue of material fact.  <u>Cox v. Cnty. of Prince William</u>, 249 F.3d 295, 299-300

(4th Cir. 2001).  Summary judgment should be denied only where a court concludes that a

reasonable jury could find in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 252.

## III.   <u>DISCUSSION</u>

Defendants move for summary judgment, asserting that plaintiff failed to (1) identify a

proper party to the litigation; (2) comply with the statute of limitations governing claims brought

pursuant to the Rehabilitation Act; and (3) satisfy the elements of a prima facie claim under the

Rehabilitation Act.[5]  (ECF No. 100-1 at 7-8).

### A.  <u>Proper Parties</u>

Defendants argue that the BCFD and the City of Baltimore are not proper parties, and that

the court should substitute the City of Baltimore with the Mayor and City Council of Baltimore as

the proper party to this case.  (ECF No. 100-1 at 8-9).  Plaintiff agrees to the dismissal of the BCFD

as a named defendant and with the proposed substitution of parties.  (ECF No. 127 at 2).  "[A]bsent

---

[5] In addition, plaintiff argues in his Complaint that defendant discriminated "against [him]
specifically due to [his] disability of job caused line of duty PTSD and other symptoms relating to
PTSD."  (ECF No. 1 at 6).  In his Opposition, plaintiff also notes that he "**can** establish a *prima
facie* case of discrimination under the Rehabilitation Act."  (ECF No. 105 at 1) (emphasis in
original).  Plaintiff, however, has not offered any evidence or made any argument in his motion
papers to support a cause of action on that claim.

a statutory or constitutional provision creating a government agency, an 'office' or 'department' bears no unique legal identity, and thus, it cannot be sued under Maryland law." <u>Owens v. Balt. City State's Attorneys Office</u>, 767 F.3d 379, 393 (4th Cir. 2014).  It is well-settled in this district that the BCFD "is an executive department of the City government that does not have an independent legal identity or the capacity to sue or be sued." <u>Weathersbee v. Balt. City Fire Dep't</u>, 970 F. Supp. 2d 418, 425 (D. Md. 2013) (citing <u>Jenkins v. Balt. City Fire Dep't</u>, 862 F. Supp. 2d 427, 441-42 (D. Md. 2012)).  Accordingly, plaintiff's claim against the BCFD is dismissed with prejudice.  <u>See</u> <u>id.</u>

Defendants are also correct that the City of Baltimore, the second named defendant in this case, is not a proper party.  The Baltimore City Charter provides that the "inhabitants of the City of Baltimore are a corporation, by the name of the 'Mayor and City Council of Baltimore,' and by that name . . . may sue and be sued." <u>Johnson v. Mayor and City Council of Balt. City</u>, No. RDB-10-0514, 2011 WL 4351516, at *3 (D. Md. Sept. 15, 2011) (quoting Baltimore City Charter art. 1 § 1 (2010)).  Accordingly, plaintiff's claim against the City of Baltimore is dismissed with prejudice, <u>see id.</u> at *4, and plaintiff's claim against the Mayor and City Council of Baltimore, the substituted, sole defendant, remains in this case.[6]

### B.  Statute of Limitations

Defendant argues that a two-year statute of limitations applies to plaintiff's claim under the Rehabilitation Act.  (ECF No. 100-1 at 9-10).  Plaintiff does not dispute that a two-year statute of limitations applies.  (<u>See</u> ECF Nos. 105-1 at 7-9, 127 at 3-6).  The Rehabilitation Act prohibits qualified employers from discriminating against qualified individuals with disabilities but

---

[6] The court will hereafter refer to "defendant" rather than "defendants."  In addition, the case caption will be changed to reflect the proper parties.

otherwise does not provide a statute of limitations.  29 U.S.C. § 794.  "When a federal statute, like the Rehabilitation Act, does not set forth a statute of limitations, federal courts borrow the state statute of limitations that applies to the most analogous state-law claim."  Ott v. Md. Dep't of Pub. Safety and Corr. Servs., 909 F.3d 655, 659 (4th Cir. 2018).  Federal courts borrow from the law of the state in which the district court sits, "as long as doing so 'is not inconsistent with federal law or policy.'"  Id. (quoting Wilson v. Garcia, 471 U.S. 261, 266-67 (1985)).  The Fourth Circuit has established that the Maryland Fair Employment Practices Act ("MFEPA"), which provides a two-year statute of limitations, is the most analogous state law to the Rehabilitation Act.  Id. at 660. Here, therefore, a two-year statute of limitations applies to plaintiff's claim under the Rehabilitation Act.

While state law provides the length of the limitations period, "[t]he applicable statute of limitations begins to run once a claim accrues, and federal law controls that determination."  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011).  "A disabled plaintiff's employment discrimination cause of action accrues on the date that the alleged unlawful employment practice occurs."  Wedderburn v. Balt. Cnty. Pub. Schools, No. 1:19-cv-215-PX, 2020 WL 374458, at *6 (D. Md. Jan. 23, 2020) (applying this standard in the context of the Rehabilitation Act).  In this case, defendant argues that three alternative dates establish that plaintiff's suit was filed beyond the two-year statute of limitations: (1) October 2015, when then-Assistant Fire Chief Jeffrey Segal approved plaintiff's request for a voluntary reduction in rank to firefighter; (2) May 4, 2016, when plaintiff was notified of his impending retirement from the BCFD; and (3) November 17, 2016, the effective date of plaintiff's separation from the BCFD. (ECF No. 100-1 at 12-14).  Plaintiff rejects each of the three alternative dates presented by defendant and further contends that his Complaint was timely filed because his last day at work

was on December 10, 2016, and he filed his lawsuit on December 7, 2018, within the two-year limitations period. (ECF No. 105-1 at 7-9). For the reasons discussed below, the court rejects defendant's arguments with respect to the October 2015 and May 4, 2016 dates, and concludes that the two-year statute of limitations began to run on November 17, 2016.

### 1. October 2015

Defendant first argues that the statute of limitations began to run in October 2015 when then-Assistant Fire Chief Jeffrey Seagal approved plaintiff's request for a voluntary reduction in rank to firefighter. (ECF No. 100-1 at 12-13). Plaintiff contends that because the BCFD approved plaintiff's request in October 2015, the BCFD had until plaintiff's last day on the job to honor his request, and plaintiff's last day with the BCFD, plaintiff asserts, did not occur until well after October 2015. (ECF No. 105-1 at 7). Plaintiff, therefore, concludes that the statute of limitations could not have started to run in October 2015. (Id.) The court agrees with plaintiff on this point. Here, plaintiff does not allege that an unlawful employment practice occurred in October 2015 and, as discussed above, the statute of limitations in an employment discrimination case "accrues on the date that the alleged unlawful employment practice occurs." Wedderburn, 2020 WL 374458, at *6. The BCFD approved plaintiff's request in October 2015, but the BCFD's alleged failure to engage in the interactive process and accommodate plaintiff's request for a voluntary reduction in rank to firefighter did not occur in October 2015.[7] Accordingly, the court concludes that the statute of limitations did not begin to run in October 2015.

---

[7] Notably, the BCFD's approval of plaintiff's request for a voluntary reduction in rank was conditioned on the existence of a vacancy, which was estimated to occur "within 6 months." (ECF No. 100-14 at 2). It is clear, therefore, that when the BCFD approved plaintiff's request in October 2015, the BCFD intended to follow through with plaintiff's request sometime after October 2015.

## 2. May 4, 2016

Next, defendant argues in the alternative that the statute of limitations began to accrue on May 4, 2016, when plaintiff received a Retirement Process Notification indicating his impending retirement, "which was clear evidence that the BCFD would not grant his request for an accommodation or engage with him in the interactive process." (ECF No. 100-1 at 13). Specifically, defendant cites Delaware State College v. Ricks, 449 U.S. 250 (1980) and Martin v. Southwestern Va. Gas Co., 135 F.3d 307 (4th Cir. 1998) for the proposition that "the limitations period in employment discrimination actions begin to accrue on the date the employee is notified of the impending separation, not on the date the consequences of the employment action takes effect." (Id. at 10-11). The case law cited by defendant, however, is inapposite. Unlike the letter of *termination* received by the plaintiff in Martin and the terminal contract and formal denials of tenure received by the plaintiff in Delaware State College, the Retirement Process Notification received by plaintiff in this case on May 4, 2016 was not a final determination that the BCFD would not engage in the interactive process or accommodate plaintiff's request for a voluntary reduction in rank. The Retirement Process Notification merely indicated that plaintiff's medical and retirement leave was set to expire on November 17, 2016. (ECF No. 105-10 at 3). Moreover, by the time plaintiff received the Retirement Process Notification on May 4, 2016, his request for a demotion had already been approved by the BCFD, and there is no evidence to suggest that defendant had definitively refused to engage in the interactive process or make a reasonable accommodation to plaintiff at that time. (See ECF No. 100-14 at 2). As a result, the court

concludes that the unlawful employment practice alleged by plaintiff did not occur on May 4, 2016, and, therefore, the statute of limitations did not begin to run on that date.[8]

### 3. November 17, 2016

Finally, defendant argues that if the limitations period did not begin to run in October 2015 or on May 4, 2016, then the court must find that the limitations period began to run on November 17, 2016, the effective date of plaintiff's retirement from the BCFD.  (ECF No. 100-1 at 13-14). Plaintiff rejects this date for several reasons.  First, plaintiff argues that he remained employed by the BCFD beyond November 17, 2016, noting that he reported for an examination at the PSI on November 22, 2016.  (ECF No. 105-1 at 8).  Clinical notes from the date of plaintiff's PSI examination, however, indicate that plaintiff was "no longer with the dept" and that he was "past his 90 days with the dept," an apparent reference to the expiration of plaintiff's 90 days of retirement leave.  (ECF No. 105-7 at 3).  In addition, records show that plaintiff appeared for an employee exit interview on November 22, 2016, which indicated that plaintiff's last day on the job before being permanently placed on medical leave was December 10, 2015.  (ECF No. 100-13 at 2).  Further, a retirement check list, also dated November 22, 2016, indicates that plaintiff had returned job-related clothing.  (Id. at 3).  The court, therefore, rejects plaintiff's argument that his examination at the PSI on November 22, 2016, proves that he remained employed by the BCFD beyond November 17, 2016.

---

[8] Defendant further relies on Walston v. City of Port Neches, 980 F. Supp. 872 (E.D. Tex. 1997) for the proposition that the limitations period begins to accrue when an employee "receives unequivocal notice of his termination."  (ECF No. 100-1 at 13-14).  The Retirement Process Notification received by plaintiff on May 4, 2016, however, did not provide plaintiff with such unequivocal notice.  As discussed above, the Retirement Process Notification simply alerted plaintiff that his medical and retirement leave would expire on November 17, 2016.  (ECF No. 105-10 at 3).

Next, plaintiff contends that his 2017 W-2 form shows that he received compensation in 2017 and, therefore, his last day of employment with the BCFD could not have been on November 17, 2016. (ECF No. 105-1 at 8). As defendant notes, however, the compensation plaintiff received in 2017 "represented payout of his accrued leave balances, i.e., vacation, sick, holiday pay and compensatory time" and was not paid to compensate plaintiff for any work performed in 2017. (ECF No. 107 at 5). A paycheck issued on January 6, 2017, from the BCFD's HR department also indicates that plaintiff was terminated on November 17, 2016, and the earnings listed on the paycheck included $8,630.08 in compensatory pay, $6,041.93 in holiday pay, $1,395.66 in personal leave pay, $6,532.14 in vacation pay, and no compensation for regular or overtime hours worked, totaling $22,599.81. (ECF No. 107-1). In addition, as defendant notes, $22,599.81 is the same amount of wages listed on plaintiff's 2017 W-2 form. (ECF No. 107 at 5-6). The court, therefore, rejects plaintiff's argument that his 2017 W-2 form proves that his last day of employment with the BCFD could not have been on November 17, 2016.

Finally, plaintiff asserts that his last day of employment with the BCFD was on December 10, 2016, not November 17, 2016. (ECF No. 105-1 at 9). In support of his argument, plaintiff points to a Notification of Retirement form (ECF No. 105-4 at 2) indicating plaintiff's last day at work was on December 10, 2016. (ECF No. 105-1 at 9). As a result, plaintiff contends, the BCFD "could have at any time, up to an including that day honored one of my many requests, [and] start the interactive process . . . ." (Id.) As defendant notes, however, while the Notification of Retirement form lists the correct month, the year is an apparent typographical error, as this date is wholly inconsistent with the record. (ECF No. 107 at 7). When reviewing the record as a whole, it is clear that plaintiff's last day at work was December 10, 2015, while plaintiff's last day of employment with the BCFD was on November 17, 2016. A timeline of plaintiff's use of medical

and retirement leave shows that plaintiff was initially placed off duty on June 7, 2015, went back

to regular duty on August 10, 2015 through October 13, 2015, and was placed back off duty on

October 14, 2015 until returning to regular duty from December 1, 2015 through December 9,

2015.  (ECF No. 100-11 at 3).  On December 10, 2015, plaintiff was placed again on medical leave

and ultimately retired on November 17, 2016.  (Id.)  In addition, plaintiff's employee exit interview

form, signed by plaintiff and his interviewer on November 22, 2016, indicates December 10, 2015

as plaintiff's last day at work.  (ECF No. 100-13 at 2).  It is clear, therefore, that "Last Day at

Work," as noted on the Notification of Retirement form (ECF No. 105-4 at 2), refers to the last

day plaintiff appeared for work before being placed on medical leave a final time on December

10, 2015.  As a result, nothing in the record supports the conclusion that December 10, 2016, was

plaintiff's last day of employment with the BCFD.[9]

Plaintiff further argues that his retirement date of November 17, 2016, was incorrect and

that defendant "pushed [him] into retirement sooner than I was supposed to."  (ECF No. 105-1 at

8).  Whether November 17, 2016 was the appropriate retirement date, however, is immaterial to

---

[9] In addition, plaintiff argues in his Surreply, for the first time, that the Notification of Retirement form was subsequently altered to validate defendant's argument that plaintiff's last day of employment with the BCFD was on November 17, 2016.  (ECF No. 127 at 4-5).  Plaintiff, however, offers only unsworn, unauthenticated documents to support his argument (see ECF No. 127-3 at 2-3), which cannot be considered on summary judgment.  Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment.").  Even if the court were to consider the documents offered by plaintiff, the alleged discrepancies do not generate a dispute of material fact as to when plaintiff's employment with the BCFD terminated.  As discussed above, the only evidence of record (except for the typographical error on the Notification of Retirement Form, ECF No. 105-4 at 2-3) reflects that plaintiff retired on November 17, 2016 (ECF Nos. 100-12 at 3, 100-13 at 2-3, 105-7 at 3, 105-10 at 3, 107-1), and that his last day at work before being placed on medical leave and ultimately retiring was December 10, 2015, not December 10, 2016 (ECF Nos. 100-11 at 3, 100-13 at 2).

the court's resolution of the statute of limitations issue because, as discussed above, a plaintiff's claim under the Rehabilitation Act begins to accrue "on the date that the alleged unlawful employment practice occurs." Wedderburn, 2020 WL 374458, at *6. Here, there is no genuine dispute that the alleged unlawful employment practice (i.e., defendant's alleged failure to provide plaintiff an accommodation and engage in the interactive process) occurred on November 17, 2016, when plaintiff retired. (See ECF Nos. 100-11 at 2, 100-12 at 2, 100-13 at 2, 105-7 at 3, 107-1). Until plaintiff's retirement on November 17, 2016, it was not clear whether defendant would provide plaintiff with an accommodation or engage in the interactive process with him. Indeed, defendant had already approved plaintiff's request for a voluntary reduction in rank, conditional on an opening being available. (ECF No. 100-14 at 2). Accordingly, because the alleged unlawful employment practice occurred on November 17, 2016, the court concludes that the two-year statute of limitations began to run on that date. Wedderburn, 2020 WL 374458, at *6 (noting that a claim under the Rehabilitation Act accrues from the date the alleged unlawful employment practice occurs). Further, because plaintiff filed his Complaint in this case on December 7, 2018, more than two years after the alleged unlawful employment practice occurred on November 17, 2016, plaintiff's Complaint is barred by the statute of limitations. See id. (holding plaintiff's claims under the Rehabilitation Act barred by the statute of limitations when defendant's adverse employment actions occurred outside the two-year limitations period). Accordingly, summary judgment for defendant is appropriate on this issue.

### C.  **Failure to Accommodate**

Alternatively, defendant argues that, even if plaintiff's Complaint was timely filed, plaintiff has failed to establish a prima facie claim of failure to accommodate.[10]  (ECF No. 100-1 at 14-19). The Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act "require a plaintiff to demonstrate the same elements to establish liability."  Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461 (4th Cir. 2012).  To establish a prima facie case of failure to accommodate under both the ADA and the Rehabilitation Act, therefore, a plaintiff must show: "(1) that she was an individual with a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; [and] (4) that the employer refused to make such accommodations."  Smith v. CSRA, 12 F.4th 396, 414 (4th Cir. 2021) (quoting Jacobs v. N.C. Admin. Office of the Cts., 780 F.3d 562, 579 (4th Cir. 2015)).  In this case, defendant concedes that plaintiff was disabled.  (ECF No. 100-1 at 15).  Defendant contends, however, that plaintiff cannot establish the second, third, or fourth elements of his prima facie claim under the Rehabilitation Act, as he failed to provide sufficient information to place the BCFD on notice that plaintiff was seeking an accommodation based on his disability, prove that he could have performed the essential functions of a firefighter, and demonstrate that a reasonable accommodation was possible given his medical constraints.  (Id. at 15-19).  For the reasons discussed below, the court concludes that plaintiff has failed to establish material factual disputes regarding the second, third, and fourth elements and, therefore, summary judgment for defendant is warranted.

---

[10] Although plaintiff's claim is barred by the statute of limitations, the court will address this alternative argument.

### 1. Employer's Notice

The second element of a prima facie claim of failure to accommodate under the Rehabilitation Act requires plaintiff to show that the BCFD had notice of his disability.  Smith, 12 F.4th at 414.  "Adequate notice simply informs the employer of both the disability and the employee's need for the accommodations for that disability."  Rock v. McHugh, 819 F. Supp. 2d 456, 473 (D. Md. 2011) (quoting EEOC v. Fed. Express Corp., 513 F.3d 360, 369 n.5 (4th Cir. 2008)).  Vague or conclusory statements, however, "revealing an unspecified incapacity are not sufficient to put an employer on notice . . . ."  Id. (citing Huppenbauer v. May Dep't Stores, Co., No. 95-1032, 1996 WL 607087, at *6 (4th Cir. 1996).  Here, plaintiff argues that he adequately notified the BCFD of his disability when he made his initial request for a voluntary reduction in rank on September 11, 2015.  (ECF No. 105-1 at 9).  Plaintiff's request, however, fails to mention his disability and why he needs an accommodation due to his disability.[11]  See Wilson v. Dollar General Corp., 717 F.3d 337, 346-47 (4th Cir. 2013) (noting that the employee must communicate to his employer both "his disability and his desire for an accommodation for that disability").  Indeed, plaintiff acknowledged as much, noting that he made his request "short and simple" because he did not want "all [his] medical business going through the chain of command."  (ECF No. 105-1 at 5).

Next, plaintiff contends that his clinician, PSI doctor, and union representative acknowledged his request for a voluntary reduction in rank to firefighter and that their acknowledgments prove that plaintiff provided adequate notice of his disability to the BCFD.  (Id.

---

[11] While defendant was aware of plaintiff's disability given defendant's knowledge that plaintiff was out on medical leave, defendant was not aware that plaintiff's request for an accommodation was based on his disability.  Under the ADA, plaintiff must inform defendant of "*both* [his] disability and [his] need for the accommodations for that disability."  Rock, 819 F. Supp. 2d at 473 (quoting EEOC v. Fed. Express Corp., 513 F.3d at 369 n.5) (emphasis added).

at 9).  There is no dispute, however, that plaintiff made a request for a reduction in rank to firefighter.  (See ECF No. 105-11 at 2).  The issue here is whether plaintiff provided the BCFD with sufficient information to place the BCFD on notice that his request was based on his disability and his need for an accommodation due to his disability.  See Wilson, 717 F.3d at 346-47.  None of the evidence presented by plaintiff, however, constitutes such adequate notice.  For example, while the letter dated November 15, 2016, from plaintiff's clinician, Mary Ann Constantinides, describes plaintiff's medical condition and inability to perform job functions, it is unclear, as defendant notes, to whom the letter is addressed and whether the BCFD received the letter.  (See ECF No. 105-7 at 4).  As a result, there is no evidence of record that the BCFD received this letter.  Plaintiff also offers progress notes provided by plaintiff's doctor at the PSI on November 22, 2016, which note plaintiff's statement that he "has spoken to the dept about possibly taking a demotion" and that "[t]hey advised him that he can take a demotion, if he has a note from his doctor."  (Id. at 3).  While the notes indicate that plaintiff stated the BCFD was aware of his request for a reduction in rank to firefighter, they do not provide any evidence that the BCFD was aware that plaintiff's request was based on his disability.  Further, plaintiff argues that his text messages with his union representative, John Burke, show that the BCFD was aware of his request.  (ECF No. 105-1 at 9).  Plaintiff, however, again misses the mark.  While the text messages suggest that former First Deputy Fire Chief Jeffrey Segal "was aware of [plaintiff's] request," the text messages do not provide notice or otherwise indicate that the BCFD was aware plaintiff's request was based on his disability and need for an accommodation for his disability.

Finally, plaintiff asserts that he made a number of phone calls and wrote a letter to the BCFD's HR department asking about the status of his request.  (ECF No. 105-1 at 9).  While the letter asserts that plaintiff made several phone calls to the BCFD's HR department indicating that

he requested a voluntary reduction in rank for "medical reasons," such a vague statement does not sufficiently place the BCFD on notice that plaintiff's request was based on his disability.  See Rock, 819 F. Supp. 2d at 474 (holding that a doctor's note vaguely informing plaintiff's employer of "an addiction" did not provide adequate notice of plaintiff's disability of alcoholism).  In sum, although plaintiff requested a demotion to the position of firefighter (ECF No. 105-11 at 2) and referenced vague "medical reasons" to support his request (id. at 3), plaintiff otherwise failed to provide the BCFD with notice that his request was based on his disability as well as his need for an accommodation for that disability.  Accordingly, the court concludes that plaintiff has failed to create a factual dispute as to the second element of his failure to accommodate claim under the Rehabilitation Act.

### 2. Essential Functions

The third element requires plaintiff to show "that with reasonable accommodation [he] could perform the essential functions of the position."  Smith, 12 F.4th at 414.  A reasonable accommodation "enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position."  Jacobs, 780 F.3d at 580 (citing 29 C.F.R. § 1630.2(o)(1)(ii)); see also Hamel v. Bd. of Educ. of Harford Cnty., JKB-16-2876, 2018 WL 1453335, at *10 (D. Md. March 23, 2018) (evaluating plaintiff's failure to accommodate claim brought under the Rehabilitation Act using the same standards as those applied under the ADA).  In addition, a reasonable accommodation "must be effective (i.e., it must address the job-related difficulties presented by the employee's disability)."  Wehner v. Best Buy Stores, L.P., No. MJG-15-2163, 2017 WL 952685, at *5 (quoting Fleetwood v. Harford Sys. Inc., 380 F. Supp. 2d 688, 699 (D. Md. 2005)).  Further, a reasonable accommodation may include "reassignment to a vacant position," among other modifications to a plaintiff's work environment.  Reyazuddin v. Montgomery Cnty., Md.,

789 F.3d 407, 413-14 (4th Cir. 2015) (citing 42 U.S.C. § 12111(9)).  To determine whether plaintiff could perform the essential functions of the position with a reasonable accommodation, the court must determine (1) whether the accommodation requested was reasonable and (2) whether plaintiff could perform the essential functions of the position had the BCFD granted the accommodation requested.  Jacobs, 780 F.3d at 580 (noting that the court's analysis of the third element of a claim for failure to accommodate proceeds in two steps).  Plaintiff here argues that he requested a voluntary reduction in rank to his previously held position of firefighter to accommodate his disability, as he was no longer able to perform his duties as a paramedic.  (ECF No. 105-1 at 5).

First, the court must determine whether plaintiff's requested accommodation of a transfer to the position of firefighter was reasonable.  See Jacobs, 780 F.3d at 580.  Plaintiff bears the burden of presenting evidence from which a jury may infer that the requested accommodation is "reasonable on its face, i.e., ordinarily or in the run of cases."  Id. (quoting Halpern, 669 F.3d at 464).  "[A] reasonable accommodation is one that is feasible or plausible [for the employer]."  Reyazuddin, 789 F.3d at 714 (citing U.S. Airways v. Barnett, 535 U.S., 391, 402 (2002)).  In this case, there is some evidence that plaintiff's requested demotion to the position of firefighter was feasible for the BCFD.  For example, plaintiff's request was tentatively approved pending a vacancy.  (ECF No. 105-11 at 2).  Plaintiff's doctor also acknowledged that plaintiff had spoken to the BCFD about possibly taking a demotion and that the BCFD "advised him that he can take a demotion, if he has a note from his doctor."  (ECF No. 105-7 at 3).

In addition, plaintiff discusses at length two other BCFD employees who were disabled and received accommodations, including one employee who was reassigned to the position of firefighter.  (ECF Nos. 105-1 at 8-9, 127 at 7-8).  "Relevant to a determination of whether the accommodations made or refused in any particular case are reasonable is the employer's past

actions towards employees who are in a similar situation to the plaintiff." Taylor v. Gilbert &
Bennett, No. 95-C-7228, 1997 WL 30948, at *2 (N.D. Ill. Jan. 15, 1997); see also Tafazzoli v.
Nuclear Regul. Comm'n, PWG-19-321 & PWG-19-1638, 2020 WL 7027456, at *18 (D. Md. Nov.
30, 2020) (allowing plaintiff to proceed with discovery to determine whether defendant provided
accommodations, similar to those requested by plaintiff, to other similarly situated disabled
employees); Smith v. McCarthy, No. ELH-20-419, 2021 WL 4034193, at *21 (D. Md. Sept. 3,
2021) (noting that evidence regarding whether other employees were allowed to work remotely is
relevant to the question of whether plaintiff's request to work remotely was reasonable).  Whether
another employee is similarly situated, however, is narrowly construed. Taylor, 1997 WL 30948,
at *2 (holding that an employee is similarly situated to plaintiff if the employee "suffer[s] from a
disability which has the equivalent physical effects of [plaintiff's disability], and [is] unable to
perform aspects of their job which are the same as those which [plaintiff] could not perform").

Here, while there is some evidence to suggest that one of the employees referenced by
plaintiff as "similarly situated" also suffered from PTSD (ECF No. 127-6 at 3), there is no evidence
in the record indicating whether the two employees suffered the same or similar job limitations as
plaintiff, let alone any evidence of how plaintiff's disability limits him, if at all, in the workplace.
See Hamel, 2018 WL 1453335, at *12 ("The ADA and Rehabilitation Act require employers to
accommodate the physical or mental *limitations* caused by an employee's disability.").  The court,
therefore, is unable to compare plaintiff to the two employees to determine whether they were
similarly situated.   In addition, plaintiff asserts that the BCFD granted the same position he
requested to another employee.  (ECF No. 127 at 7).  Plaintiff, however, fails to present evidence
of that employee's disability or related job limitations.  (See ECF No. 127-5).  In sum, there is

insufficient evidence for the court to conclude that the two employees were similarly situated to plaintiff and that, as a result, plaintiff's requested accommodation was reasonable.

Even if plaintiff's requested accommodation was reasonable, however, plaintiff fails to offer evidence that he could even perform the essential functions of the position of firefighter had the BCFD granted his accommodation.  See Jacobs, 780 F.3d at 580.  While not all job functions are essential, a job function is essential when "'the reason the position exists is to perform that function,' when there aren't enough employees available to perform the function, or when the function is so specialized that someone is hired specifically because of his or her expertise in performing that function."  Id. at 579 (quoting 29 C.F.R. § 1630.2(n)(2)).  Evidence of whether a function is essential includes written job descriptions, among other factors.  29 C.F.R. § 1630.2(n)(3).  Here, the BCFD's written job descriptions indicate that a firefighter "responds to and mitigates hazardous incidents, extinguishes fires, performs rescues, and provides emergency medical assistance."  (ECF No. 100-5 at 9-14).  In addition, requisite skills include the ability to respond quickly under pressure, use sound judgment, and work with others under stress.  (Id.)

Here, plaintiff argues that he and his clinician believed he could perform the essential functions of a firefighter.  (ECF No. 105-1 at 9-10).  Plaintiff, however, provides no evidence to support his claim.  Instead, plaintiff references documents indicating that the BCFD engaged in the interactive process with other disabled employees, but these documents do not provide evidence of *plaintiff's* ability to perform the essential functions of a firefighter or some other position within the BCFD.  (Id.)  Further, plaintiff contends that while his medical providers noted that he was not able to work as a paramedic, they did not otherwise indicate that he was unable to perform as a firefighter or in a variety of other positions.  (ECF No. 127 at 8).  Plaintiff's argument, however, is not supported by the record.  For example, while plaintiff's clinician opined that

plaintiff was "permanently disabled from returning to the BCFD as a Paramedic," she also noted, two days before plaintiff retired, that plaintiff was "disabled from *all work* at this time" and that she would "re-evaluate his condition in two months to see if he is prepared to try to enter the job force in a different position."  (ECF No. 105-7 at 4) (emphasis added).

In addition, plaintiff admits that he "was not able to do any job functions, for the entire year [he] was off injured."  (ECF No. 105-1 at 3).  Further, plaintiff indicated in his answers to defendant's interrogatories that he suffered from PTSD stemming from an incident in April 2015, and he struggled with "depression, anxiety, insomnia, flashback [sic], [and] cognitive issues that make it hard to focus, at times it is extremely debilitating where daily activities of living are difficult."  (ECF No. 100-6 at 3).  Plaintiff, however, fails to provide any evidence of how, despite his PTSD and "extremely debilitating" medical conditions, he was able to perform the essential functions of a firefighter, such as extinguishing fires and rescuing emergency victims.  (See ECF Nos. 105-1 at 9-10, 127 at 6-8).  The court, therefore, concludes that plaintiff has failed to offer evidence that he was able to perform the essential functions of a firefighter or some other position within the BCFD.  See Wilson, 717 F.3d at 346 (holding that plaintiff did not satisfy the third element of his failure to accommodate claim on summary judgment when he failed to provide any evidence, including evidence from his doctor, that he was able to lift and load objects, an essential function of the position he sought).  Accordingly, plaintiff fails to satisfy the third element of his prima facie claim of failure to accommodate under the Rehabilitation Act.

### 3. Refusal to Accommodate

Finally, the fourth element requires plaintiff to show that the BCFD refused to make a reasonable accommodation.  Smith, 12 F.4th at 414.  Specifically, plaintiff argues that the BCFD failed to engage in the interactive process.  (ECF No. 105-1 at 2).  An employer who fails to engage

in the interactive process, however, "will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible" had the parties engaged in a good faith interactive process.  Wilson, 717 F.3d at 347 (citing Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1231 (10th Cir. 2009)).

      In this case, defendant does not dispute that the BCFD failed to engage in the interactive process with plaintiff.  Like the plaintiff in Wilson, however, who "failed to identify a possible reasonable accommodation that could have been discovered in the interactive process and would have allowed him to perform the essential functions of his position," Wilson, 717 F.3d at 347, plaintiff here provides no evidence that, had the interactive process occurred, a reasonable accommodation would have been discovered.  As discussed above, the evidence of record shows that plaintiff's clinician noted that plaintiff was "disabled from all work."  (ECF No. 105-7 at 4). Plaintiff also elaborated on his struggles with PTSD, depression, and anxiety, noting that his disability is so debilitating that it can be difficult to perform activities of daily living.  (ECF No. 100-6 at 3).  Further, plaintiff admitted that he "was not able to do any job functions, for the entire year [he] was off injured."  (ECF No. 105-1 at 3).  When a plaintiff requests to be transferred to an alternative vacant position due to his disability under the Rehabilitation Act, "if, after a full opportunity for discovery, the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred, summary judgment must be granted in favor of the defendant—even if it also appears that the defendant failed to engage in good faith in the interactive process."  Wehner, 2017 WL 952685, at *8 (quoting Donahue v. Consol. Rail Corp., 224 F.3d 226, 233-34 (3d Cir. 2000)).  In sum, there is no evidence in the record from which a jury could reasonably conclude that had defendant engaged in the interactive process with plaintiff, a reasonable accommodation would have been possible and

allowed plaintiff to perform the essential functions of his desired position of firefighter or any other position within the BCFD.  Accordingly, even if plaintiff's claim under the Rehabilitation Act is not barred by the statute of limitations, summary judgment for defendant is appropriate.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, defendant's Motion for Summary Judgment (ECF No. 100) is GRANTED.  In addition, the case caption is to be changed to reflect the proper parties. Specifically, "Mayor and City Council of Baltimore" will replace "City of Baltimore" and "Baltimore City Fire Department" as defendant.  A separate order will be issued.


March 18, 2022                                                     _____/s/_____
                                                                             Beth P. Gesner
                                                                             Chief United States Magistrate Judge